UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JESSICA L.,

                                                                       DECISION AND ORDER

                        Plaintiff,

                                                                        19-CV-0554L

             v.

ANDREW SAUL,
Commissioner of Social Security,

                        Defendant.
_____

       Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

       On February 13, 2015, plaintiff, then twenty-four years old, filed an application for supplemental security income, alleging disability as of April 1, 2012. (Administrative Transcript, Dkt. #10 at 14). Her application was initially denied. Plaintiff requested a hearing, which was held May 24, 2018 before Administrative Law Judge ("ALJ") Maria Herrero-Jaarsma.

       On June 21, 2018, the ALJ issued a decision finding plaintiff not disabled. (Dkt. #10 at 14-25). That decision became the final decision of the Commissioner when the Appeals Council denied review on March 6, 2019. (Dkt. #10 at 1-4).

       The plaintiff has moved for remand of the matter for further proceedings (Dkt. #18), and the Commissioner has cross moved (Dkt. #20) for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the

Commissioner's cross motion is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarized plaintiff's medical records throughout the relevant period, which reflect treatment for obesity, hidradenitis suppurativa (an auto-inflammatory skin disease), major depressive disorder, post-traumatic stress disorder ("PTSD"), and borderline personality disorder with anxiety disorder, which the ALJ determined together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #10 at 16).

The ALJ applied the special technique and determined, based on the report of the consulting psychologist and plaintiff's testimony concerning her mental health symptoms, that plaintiff has a mild limitation in understanding, remembering, and applying information, a moderate limitation in social interaction, a moderate limitation in concentration, persistence and pace, and a mild limitation in adapting and managing herself. (Dkt. #10 at 17-18).

After considering the evidence of record, the ALJ found that plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following limitations: plaintiff cannot perform jobs requiring the driving of motor vehicles or other machinery. She can understand, carry out and remember simple, routine and repetitive tasks,

defined as work that requires performance of the same tasks every day with little variation in location, hours or tasks. She must work in a low-stress environment, defined as one with no supervisory responsibilities, no independent decision-making required except for simple, routine and repetitive decisions, and few, if any, changes in work routines, processes or settings. She cannot perform work that requires travel to unfamiliar places. She can have no more than occasional contact and interaction with supervisors and coworkers, and only incidental contact with the public. She is limited to work that can be performed independently or generally isolated from other employees, although coworkers can be in the same general area. (Dkt. #19 at 18-19).

When presented with this RFC at the hearing, vocational expert Lanell R. Hall testified that an individual with this RFC could perform the representative unskilled positions of laundry worker, cooker helper, and floor waxer. (Dkt. #10 at 24). The ALJ accordingly found plaintiff, at the time of the hearing a twenty-eight-year-old woman with a limited education and no prior employment, "not disabled." This appeal followed.

## I. The Combined Effect of Plaintiff's Impairments

Plaintiff initially argues that the ALJ erred by failing to acknowledge or account for limitations posed by the combined effects of all of plaintiff's severe and non-severe impairments. Specifically, she argues that none of the medical opinions of record mentioned her diagnoses of hidradenitis suppurativa and PTSD (which the ALJ found were severe impairments) or plaintiff's additional diagnoses of bipolar disorder, learning disability, pre-diabetic status and vitamin deficiency, which the ALJ did not include among plaintiff's severe impairments. Plaintiff accordingly argues that the ALJ's RFC determination fails to account for the symptoms associated with these conditions, such as pain, fatigue, difficulty walking or lifting, dizziness, social isolation, paranoia, thought disturbances, and angry outbursts.

The Court disagrees. In order to determine whether a consulting examiner's opinion is sufficient to render the record complete in the absence of a treating source opinion, "the court must assess the quality and scope of the opinion." *Delgado v. Berryhill*, 2018 U.S. Dist. LEXIS at *29 (D. Conn. 2018). Here, plaintiff received physical and mental evaluations by a consulting internist and psychologist, each of whom performed objective testing and rendered detailed opinions which supported their conclusions concerning plaintiff's limitations. These evaluations were sufficiently comprehensive to capture any limitations arising from plaintiff's combined impairments (e.g., weakness, difficulty walking, paranoia, thought disturbances), and they support the ALJ's findings.

For example, although consulting psychologist Dr. Kevin Duffy did not specifically list plaintiff's self-reported mental health diagnoses in describing her background, he nonetheless examined and objectively assessed all of the factors relevant to performing the mental aspects of work, including plaintiff's demeanor, social skills, eye contact, speech, thought processes, attention and concentration, recent and remote memory skills, and cognitive functioning. (Dkt. #10 at 336-38). He determined that plaintiff may have mild-to-moderate difficulties in maintaining attention and concentration, but could otherwise perform the basic mental health demands of work. (Dkt. #10 at 339). Because the limitations found by Dr. Duffy were based on his objective findings after a complete examination (and not upon any prior diagnosis or lack thereof), there is no logical basis for the Court to presume that, had Dr. Duffy been provided with the a more complete list of prior mental health diagnoses, the scope of his examination or his findings would have been any different.

Similarly, consulting internist Dr. Michael Rosenberg noted that plaintiff had a history of lower back pain and shingles. He performed a full physical examination and noted that plaintiff

had normal gait and stance, could walk on heels and toes without difficulty, had full range of motion in her spine and extremities, and full strength, grip strength, and hand and finger dexterity. Finding nothing abnormal, he opined that plaintiff has no physical limitations. (Dkt. #10 at 342-45). Again, because Dr. Rosenberg's opinion was based on objective findings after a full and complete physical examination, there is no reason to conclude that his opinion would have been altered had plaintiff mentioned additional dermatological issues or a previously-diagnosed need to take vitamin supplements.

In sum, the medical opinions of record were a sufficient basis upon which the ALJ could make specific findings concerning plaintiff's RFC, and the ALJ's discussion did not ignore any diagnosis for which there was any record evidence of an appreciable effect on plaintiff's ability to perform the exertional or nonexertional demands of work. An ALJ "is not required to reconcile explicitly every conflicting shred of medical testimony. Nor is the ALJ required to mention or discuss every single piece of evidence in the record." *Zabala v. Astrue*, 2008 U.S. Dist. LEXIS 2497 at *12 (S.D.N.Y. 2008) (internal quotations and citations omitted), *aff'd*, 595 F.3d 402 (2d Cir. 2010). Here, the ALJ's RFC findings were consistent with plaintiff's treatment records, objective test results, and the medical opinions of record. I find no basis to disturb them.

The ALJ also did not err in questioning plaintiff's testimony about the severity of her symptoms, based on indications in the record that she rarely sought treatment, was largely non-compliant with recommendations by treatment providers, and was apparently motivated to seek treatment "with one goal:" the receipt of public assistance benefits, payment of which she indicated was contingent on her being in treatment. *See* Dkt. #10 at 363-67 (November 6, 2015 mental health treatment note: "[patient] presents with one goal to obtain cash assistance . . . [t]here are no records to correlate care with the patient's reports [of disabling symptoms]"); 398 (March

5

28, 2017 treatment note for checkup with internist Dr. Pratik Patel: plaintiff reported that she had not sought psychological or dermatological treatment in over a year and a half, but was doing so now to "have her disability forms signed," although Dr. Patel made grossly normal examination findings and noted that "[t]hese conditions do not prevent her physically/medically to go to school or work"); 413 (November 14, 2017 mental health counseling note: claimant states "I want medication for [my] depression so I can be more happy. I also want to continue treatment so I do not lose my government benefits . . . "). It is well settled that an ALJ may properly consider a claimant's motivation for seeking treatment in evaluating the credibility of subjective allegations of disabling impairments, and the ALJ did not err by doing so here. *See Davis v. Berryhill*, 2018 U.S. Dist. LEXIS 71718 at *21-*22 (W.D.N.Y. 2018). *Accord Jochen v. Apfel*, 2000 U.S. Dist. LEXIS 20683 at *53 (W.D.N.Y. 2000)(in evaluating a claimant's credibility, the ALJ may properly consider the claimant's motivation in applying for benefits).

**II.     The Completeness of the Record**

Plaintiff also argues that the ALJ failed to complete the record, and that there were significant evidentiary gaps with respect to the records of plaintiff's mental health and primary care treatment, including "medical and mental health treatment notes" from all of plaintiff's treatment providers. (Dkt. #18-1 at 22).

It is well settled that an ALJ's "duty to develop the record is not infinite, and when, as here, evidence in hand is consistent and sufficient to determine whether a claimant is disabled, further development of the record is not necessary." *Saeli v. Saul*, 2019 U.S. Dist. LEXIS 198951 at *6-*7 (W.D.N.Y. 2019)(internal quotation marks and citation omitted).

Initially, there is no indication of any "obvious gaps" in the record. Plaintiff identifies providers from whom additional records may theoretically be available, but does not describe the

nature or alleged content of any missing records, or specify dates or types of treatment she believes were not represented in the record. Indeed, plaintiff's records would not be expected to cover the entire period under review. Despite alleging a disability onset date of April 1, 2012, plaintiff's application for disability benefits does not identify any regular medical treatment provider, or indicate that any objective testing was performed, prior to November 2014. (Dkt. #10 at 256, 286-88). With respect to plaintiff's mental health treatment, the record indicates that plaintiff did not start experiencing psychological symptoms or seek treatment for them until 2015 – three years after the alleged disability onset date – and after an initial round of treatment visits, voluntarily discontinued both dermatological and mental health treatment for more than a year prior to January 2017. (Dkt. #10 at 388-90, 398). *See* Dkt. #10 at 324 (April 29, 2015 treatment note: "[s]he wants to see a counsellor [sic] as she feels low, depressed . . . has never seen a psychiatry doctor"); 351 (September 16, 2015 mental health treatment intake form); 414 (April 13, 2017 mental health counseling note: "diagnosed with Bi-Polar, depression, PTSD, anxiety in the past. He[r] symptoms started about 2 years ago, and she sought out treatment . . ."). In fact, plaintiff's counsel was present at her hearing, when the ALJ admitted additional exhibits, and had no objection to the completeness and closure of the record.

In sum, the record before the ALJ was sufficiently complete for her to make a well-reasoned determination supported by substantial evidence. In addition to the reports of the consulting internist and psychologist, the record included an agency reviewer report, outpatient medical records from March 12, 2015 through March 22, 2017, and mental health progress notes from September 16, 2015 through December 22, 2016 and March 8, 2017 through September 27, 2017. As discussed above, to the extent that some time periods were not represented by the medical evidence of record, it appears that plaintiff did not seek or receive treatment during those periods.

While the evidence of record may have been insufficiently convincing to *support* plaintiff's claim of disability, it was not insufficiently developed for the ALJ to *decide* plaintiff's claim of disability. I find that the record contained no obvious gaps, and that remand for the obtainment of additional evidence is not necessary.

I have considered the rest of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #18) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #20) is granted, and the decision-appealed-from is affirmed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
January 27, 2021.